GEORGE H. MAYNARD, Appellant, *v.* ANGELINE VANDERWERKER, Respondent.

*Decision of the trial court — when reversed upon the facts.*

The facts and circumstances considered and commented upon which necessitate the reversal of the decision reached by a trial court, upon the question whether or not the defendant was made a beneficiary of a certain certificate under an agreement that it should be issued to her, and that she should thereafter pay all assessments levied thereon. (CULLEN, J., dissenting.)

APPEAL by the plaintiff, George H. Maynard, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 2d day of August, 1893, upon the decision of the court rendered at the Kings County Special Term, dismissing the plaintiff's complaint upon the merits.

*Sidney Williams* and *E. B. Barnum*, for the appellant.

*Thomas E. Pearsall*, for the respondent.

PRATT, J. :

This case was decided at Special Term clearly in accordance with an overwhelming weight of evidence upon all the issues except one, to wit, whether or not the defendant was made a beneficiary of the certificate in question under an agreement that it should be issued to her, and she should thereafter pay all the assessments levied thereon.

It is not without much hesitation that I am constrained to disagree with the conclusion reached by the learned judge who tried the the case with the greatest care and circumspection, with the advantage of seeing the witnesses and hearing them testify ; but a careful reading of the evidence has impressed me so strongly, that upon the one issue above stated the decided weight of evidence is so much against the contention of the defendant, that I feel constrained to write for a reversal.

Nay, more ; I am of opinion that this defense is an afterthought born of a failure to make out any case on the ground of incapacity, fraud or undue influence.

In the first place, there is no sufficient evidence that such an agreement was ever made. The principal witness for defendant upon this point is her husband who is interested in the result, but he fails to testify to any agreement ; besides, what he did say was made to appear unreasonable and incredible on a cross-examination. He nowhere states that the defendant agreed to accept the policy or pay the assessments.

A Mrs. Tams is the next witness in importance. She testifies to nothing as regards such a contract except to certain alleged declarations made by Ray Smalley, the insured, before she was married to the plaintiff.

The only matter testified to by Mrs. Tams which looks like an agreement, is the statement that Ray said " My aunt agreed when I

insured to pay the assessments, and I agreed that it should always be hers."

It is to be observed that this is evidence of declarations given long after they were made, which should always be scrutinized with great care. For my part I do not believe that Ray Smalley ever made such a declaration. It is unreasonable that such an agreement would be entered into by a person of years with a young person like Ray Smalley, but what makes it more unreasonable is that it is inconsistent with the whole conduct of all the parties. Besides, the cross-examination of this witness showed either that her story was unreasonable or her memory sadly at fault.

The most charitable construction which, in view of all the circumstances, can be placed upon her testimony, is that she has talked so much about this matter with the defendant and others that she has got matters mixed in her mind.

But the evidence, I think, plainly shows that the defendant never paid any assessments on this policy, and never had rightful possession of it after the marriage of Ray Smalley; it is even doubtful if she ever had it before that time. Here the husband of defendant again says that upon one occasion he saw his wife hand Ray some money to pay an assessment. That might have been a loan, as the balance of the conversation was not given, but what stamps this assessment theory is the fact that on one occasion, in the presence of Mr. Livingston, a disinterested witness, Ray asked the defendant to lend her a small sum to make up enough to pay an assessment; the defendant did so, and said : " I will lend it to you, be sure and pay me back," which is utterly inconsistent with the theory that she was paying the assessments.

There is not a scintilla of proof by any officer of the company, nor by a receipt, that defendant ever paid an assessment, except one receipt, which was proved to be a forgery.

The fact that defendant had a few receipts was explained by the fact that Ray kept them in her trunk or box, which was left at the house of defendant, to which she had access, and the contents of which she admits she took possession.

Neither do I think there is much doubt that the defendant took the policy from the trunk, and afterwards stated to Ray that it had been lost. Ray Smalley certainly wanted it in order to effect a transfer

to her husband, and went to defendant, who told her it was lost, which was untrue as proved by the declarations of the defendant to Mrs. Livingston. The whole conduct of defendant is inconsistent with her claim. If there was such an agreement and she had paid the assessments, would she have told Ray Smalley it was lost? Would she not rather have told her that she had it and owned it by virtue of the agreement?

Again, the conversation with Mrs. Livingston is remarkable; she does not say I took it out of the trunk because it was mine, or because she had agreed to pay assessments on it, but she gives as a reason that " it was made out in her name."

It is to be noticed that at no time during the life of the insured did the defendant lay any claim to the policy. There cannot be any doubt of the policy being taken from the trunk, as two disinterested witnesses testify to defendant's admissions in regard to it.

Again, in writing to the supreme secretary stating her claim, after she had time to consider all the matters, she writes, " Mr. Maynard could have had the policy at any time if he desired." Also, in a conversation with Mr. Livingston a short time before the trial, she stated " That if Ray or Mr. Maynard had asked me for the certificate I would have given it to them willingly."

Are these statements at all reconcilable with her claim of absolute ownership? Further, can there be any doubt that Ray did call on her for the certificate in order to make the change, and was told it was lost, and, on the strength of that statement, made oath of its loss to effect the transfer?

It is a significant fact that the claim of a vested interest in the certificate appears for the first time in the amended answer. In the whole history of the case no claim is made of vested ownership by defendant until this amended answer is filed, although it was asserted in an affidavit and letter that she had paid some assessments, but not that she had ever agreed to pay assessments.

It is clear that she paid no assessments after the marriage, and there is no proof worthy of belief that she paid any before that event.

In writing this opinion I have assumed that the evidence of Mrs. Tams and defendant's husband of the declarations of Ray Smalley were competent to prove the contention of defendant, but it is in

the nature of the declarations of an assignor after an assignment to impeach the title of a subsequent assignee from the same assignor. Assuming, however, that this evidence was properly admitted and considered, I think that the case on the part of the defendant utterly fails.

Much might be said of the contradiction and inconsistencies of the evidence offered by defendant, but enough has been said to show the effect the evidence has had upon my mind. It may be added, however, that the fact that plaintiff became the beneficiary in good faith and supposed he was rightfully vested with such interest is shown by his changing his policies in favor of his wife, the deceased.

The judgment must be reversed and a new trial granted, costs to abide the event.

DYKMAN, J., concurred; CULLEN, J., dissented.

Judgment reversed and new trial granted, costs to abide the event.